**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: June 12, 2014
Date Decided: September 3, 2014

Philip A. Rovner, Esq.
Jonathan A. Choa, Esq.
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

Brian M. Rostocki, Esq.
John C. Cordrey, Esq.
Reed Smith LLP
1201 N. Market St., Suite 1500
Wilmington, DE 19801

RE:   *Harry Pontone v. Milso Industries Corporation, et al.*
      Civil Action # 7615-VCP

Dear Counsel:

On May 29, 2014, the Court issued a Memorandum Opinion (the "Opinion")

addressing the exceptions of Defendant Milso Industries Corp. ("Milso") to the

Second Report of the Special Master relating to corporate advancement of disputed

fees and expenses.[1]   The Opinion overruled most of Milso's exceptions, but the

Court partially agreed with one of Milso's legal interpretations and held that, for

fees and expenses relating to counterclaims to be advanceable, the counterclaim

---

[1]     *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973 (Del. Ch. May 29, 2014)
        [hereinafter Mem. Op.].

must be compulsory. Applying that holding, the Opinion found two counterclaims by Plaintiff, Harry Pontone ("Pontone"), were not compulsory and, thus, were not advanceable. Specifically, the Opinion held that Pontone's counterclaim for misappropriation of name, image, and likeness and his counterclaim for abuse of process were not subject to advancement.

Currently before the Court is Pontone's timely-filed motion for reargument under Court of Chancery Rule 59(f). Pontone's motion requests a rehearing on the Opinion's holding concerning the legal standard applicable to advancement for counterclaims and, regardless, seeks reconsideration of the Opinion's holding that the two above-mentioned counterclaims were not compulsory. In opposition, Milso argues that the Court held correctly on each of these issues. According to Milso, Pontone's motion merely rehashes the same arguments the Court rejected previously and improperly attempts to supplement the record.

For the reasons that follow, the motion for reargument is denied.

## I.      Legal Standard

To prevail on a motion for reargument under Rule 59(f), the moving party must demonstrate either that the court overlooked a decision or principle of law that would have controlling effect or that the court misapprehended the facts or the

law so the outcome of the decision would be different.[2]  For the movant to prevail, a misapprehension of the facts or the law must be both material and outcome determinative of the earlier decision.[3]  Mere disagreement with the Court's resolution of a matter does not entitle a party to a rehearing, and the Court will deny a motion for reargument that does no more than restate a party's prior arguments.[4]

The Court generally will not consider new evidence on a motion for reargument.  Reargument under Rule 59(f) "is only available to re-examine the existing record."[5]  In appropriate circumstances, however, a litigant may seek reargument based on newly discovered evidence.[6]  "To succeed on such a basis, an

---

[2]  *See, e.g.*, *Preferred Invs., Inc. v. T&H Bail Bonds*, 2013 WL 6123176, at *4 (Del. Ch. Nov. 21, 2013); *Medek v. Medek*, 2009 WL 2225994, at *1 (Del. Ch. July 27, 2009); *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, 2007 WL 4644708, at *1 (Del. Ch. Dec. 31, 2007).

[3]  *See, e.g.*, *Preferred Invs.*, 2013 WL 6123176, at *4; *Aizupitis v. Atkins*, 2010 WL 318264, at *1 (Del. Ch. Jan. 27, 2010); *Medek*, 2009 WL 2225994, at *1.

[4]  *See, e.g.*, *Preferred Invs.*, 2013 WL 6123176, at *4; *In re Mobilactive Media, LLC*, 2013 WL 1900997, at *1 (Del. Ch. May 8, 2013); *Brown v. Wiltbank*, 2012 WL 5503832, at *1 (Del. Ch. Nov. 14, 2012).

[5]  *Reserves Dev. LLC*, 2007 WL 4644708, at *1.

[6]  *In re Mobilactive Media*, 2013 WL 1900997, at *1; *Reserves Dev. LLC*, 2007 WL 4644708, at *1.

applicant must show the newly discovered evidence came to his knowledge since the trial and could not, in the exercise of reasonable diligence, have been discovered for use at the trial."[7]

## II.        Pontone's Motion for Reargument

Pontone dedicates a significant portion of his motion to critiquing the Opinion's analysis of the Delaware Supreme Court's decision in *Citadel Holding Corp. v. Roven*.[8]  The remainder of the motion argues that the two counterclaims this Court found non-compulsory in fact are compulsory.   These issues are addressed in turn.

### A.        The *Roven* Standard for Advanceability of Counterclaims

A key portion of the Opinion dealt with the proper legal standard under Delaware law for advancement of fees and expenses for counterclaims.[9] Resolution of the issue turned on the proper interpretation of the Delaware Supreme Court's holding in *Roven* that counterclaims must be "necessarily part of the same dispute" as the affirmative claims asserted against the advancee and be

---

[7]     *Reserves Dev. LLC*, 2007 WL 4644708, at *1.

[8]     603 A.2d 818 (Del. 1992).

[9]     Mem. Op. at *3-7.

"advanced to defeat, or offset" those claims.[10] Subsequent cases from the Court of Chancery[11] potentially added an interpretive gloss on the Supreme Court's standard and the parties vigorously contested—and in Pontone's case continue to contest—the proper standard. In the briefing before this Court on the exceptions to the Second Report of the Special Master, the parties collectively devoted no fewer than twenty-five pages solely to the proper legal standard. They also devoted another forty pages to applying their respective interpretations seriatim to the eight Pontone counterclaims found advanceable by the Special Master. Thus, the parties were heard fully on this issue.

To satisfy the burden for reargument, Pontone must show an outcome-determinative overlooking of principle or precedent or else a similarly critical misapprehension of the law or facts. Pontone asserts that the Opinion adopts an "unsupported" interpretation of the *Roven* standard and that the rationales of other Court of Chancery cases cited in the Opinion rest upon those decisions' authors'

---

[10]    603 A.2d at 824.

[11]    *See, e.g., Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392 (Del. Ch. 2009); *Sun-Times Media Gp., Inc. v. Black*, 954 A.2d 380 (Del. Ch. 2008); *Zaman v. Amedo Hldgs., Inc.*, 2008 WL 2168397 (May 23, 2008); *Reinhard & Kreinberg v. Dow Chem. Co.*, 2008 WL 868108 (Mar. 28, 2008).

own "misreading of *Roven*."[12]  Pontone's motion fails to identify any overlooked precedent or principle that would control the outcome here.  Instead, he rehashes arguments previously rejected by the Court, as catalogued in Milso's opposition to the motion.[13]

In the motion for reargument, for example, Pontone argues that the "indelibly clear" holding of *Roven* is that "counterclaims are advanceable . . . *whether or not those counterclaims also happen to be compulsory in nature*."[14] Similarly, in earlier briefing, Pontone observed that "nowhere in the decision does the Supreme Court state that Mr. Roven's counterclaims were compulsory or that noncompulsory counterclaims could not qualify for advancement."[15]  In an effort to convince the Court of the soundness of his position, Pontone's motion offers a

---

[12]   Pl.'s Mot. for Rearg. ("Pl.'s Mot.") 9.

[13]   Def.'s Answer to Pl.'s Mot. for Rearg. ("Def.'s Answer") 4-5 (quoting examples of arguments made in the briefing preceding the Opinion that Pontone repeated nearly verbatim in the motion for reargument).

[14]   Pl.'s Mot. 3.

[15]   Pl.'s Answering Br. in Opp'n to Milso's Exceptions to the Second Report of the Special Master ("Pl.'s Exceptions Br.") 9.  Defendant Milso Industries Corp.'s Opening Brief in Support of its Exceptions to the Special Master's Second Report and its subsequent Reply Brief are cited to similarly as "Def.'s Exceptions Br." and "Def.'s Exceptions Reply."

reprise of the same thorough analysis of *Roven*'s facts and reasoning[16] that he had provided previously.[17] In a further attempt to sway the Court, Pontone now points to the appellate briefs in the *Roven* case and asks the Court to take judicial notice of those documents.[18] These efforts do not satisfy Pontone's burden.

An increasingly detailed version of an argument already rejected by a court does not show that the court previously overlooked or misapprehended any fact or law in an outcome-determinative way. Instead, Pontone's briefing reveals that he disagrees with the Court's legal interpretation that *Roven* requires counterclaims to be compulsory to be advanceable. Pontone's proper course of action would be an appeal to the Delaware Supreme Court at the appropriate time to try to obtain the legal interpretation he seeks. As for the present motion, Pontone has not met the standard required for this Court to grant reargument.

### B. The Non-Compulsory Counterclaims

Aside from Pontone's disagreement with the Court's interpretation of *Roven*, Pontone further argues that the two counterclaims the Opinion found non-advanceable are, in fact, compulsory counterclaims and therefore advanceable. On

---

[16]    Pl.'s Mot. 6-8.

[17]    Pl.'s Exceptions Br. 7-9.

[18]    Pl.'s Mot. 8 n.1.

these topics, Pontone's motion suffers from the same flaws as noted above: the motion merely repeats rejected arguments without pointing to some overlooked law or facts that would have changed the outcome of the Opinion.

The Opinion found that Pontone's counterclaims for misappropriation and abuse of process were not compulsory. On the misappropriation counterclaim, Pontone, in the motion for reargument, asks the Court to supplement the record—a matter addressed below—and advances two arguments why the misappropriation counterclaim is compulsory: (1) Defendants in this case, who are the plaintiffs in the underlying litigation in Pennsylvania (the "Pennsylvania Plaintiffs"[19]), repeatedly placed Pontone's goodwill at issue in the Pennsylvania Action; and (2) the Opinion "unreasonably interprets the actual scope of Federal Rule 13(a) for compulsory counterclaims."[20]

Much of the dispute here centers on the nature of the claims the Pennsylvania Plaintiffs are asserting in that litigation. In the motion for reargument, Pontone emphasizes the Pennsylvania Plaintiffs' focus on Pontone's

---

[19] Unless otherwise noted, terms such as this, which are defined in the Opinion, have the same meaning as was ascribed to them in the Opinion.

[20] Pl.'s Mot. 12.

personal goodwill.[21] Milso counters by showing the strong similarities between Pontone's pre-Opinion briefing and his present arguments,[22] and Milso continues to maintain that Pontone's misappropriation counterclaim is based largely on the use of Pontone's image on a cake in September 2011.[23] Milso further contends that references to Pontone's goodwill in the Pennsylvania Action relate to damages calculations pertinent to the Pennsylvania Plaintiffs' lost profits claim.[24] The Court heard similar arguments about the nature of the claims being pursued in the Pennsylvania Action before it issued the Opinion.[25] Personal goodwill can constitute an element of a lost profits claim tied to the sale of a business without that goodwill being related to specific instances of misappropriation of the other party's image that occurred several years after the sale.

Pontone further argues that the Court adopted too narrow of an interpretation of the meaning of the term "compulsory counterclaim." Here, Pontone attempts to

---

[21] *Id.* at 11-12.

[22] Def.'s Answer 8-9.

[23] *Id.* at 9.

[24] *Id.* at 9-10.

[25] *See* Pl.'s Exceptions Br. 31-32; Def.'s Exceptions Br. 32-33; Def.'s Exceptions Reply 13-14.

show that, despite the Pennsylvania Plaintiffs having asserted a trademark infringement claim only against *Scott* Pontone, and not his father, Harry Pontone, the misappropriation counterclaim in the Pennsylvania Action qualifies as compulsory because it "arises as an offshoot of the same set of facts and transactions that have been placed in issue by the Pennsylvania Plaintiffs."[26]

In the Opinion, the Court responded to the parties' previously-made arguments about the Pennsylvania Action and determined that Pontone's misappropriation counterclaim is "legally and factually distinct from, and logically unrelated to, the affirmative claims asserted against Pontone in the Pennsylvania Action."[27] Pontone previously attempted, with similar arguments,[28] to convince

---

[26]  Pl.'s Mot. 13.

[27]  Mem. Op. at *10.

[28]  *Compare* Pl.'s Exceptions Br. 31 ("In the Pennsylvania Litigation, Milso alleges that one of the ways in which Pontone breached his fiduciary duties was by, *inter alia*, refusing to agree to sign a new proposed employment agreement."), *with* Pl.'s Mot. 13 ("The Pennsylvania Plaintiffs also claim that Pontone breached his fiduciary duties by, *inter alia*, refusing to agree to sign a new employment agreement, which proposed the grant of rights to use Pontone's name and personality at trade events."); *and* Pl.'s Exceptions Br. 31 ("The record in the Pennsylvania Litigation also shows that even the evidence in support of Pontone's counterclaim comes from the same customers that Milso placed in issue and even expressly referenced in its Complaint against Pontone."), *with* Pl.'s Mot. 13 ("The Pennsylvania Plaintiffs pleaded that Pontone's alleged wrongdoing involved his failure to

the Court that the misappropriation counterclaim was sufficiently related to the Pennsylvania Plaintiffs' claims to qualify for advancement. But, Pontone failed to identify any outcome-determinative overlooked or misapprehended facts or law that would lead this Court to revisit its decision. The Court continues to view the wrong complained of in Pontone's misappropriation counterclaim as distinct from and significantly narrower than the Pennsylvania Plaintiffs' claims regarding Pontone's alleged breaches of his fiduciary duties or contractual obligations relating back, at least in part, to the sale of his family's business to Milso.

For the second counterclaim, abuse of process, Pontone advances four separate arguments: (1) Pontone was granted leave to replead the abuse of process claim in the Pennsylvania Action; (2) the abuse of process claim actually was ripe; (3) Milso previously conceded that the abuse of process claim was compulsory; and (4) abuse of process counterclaims have been found compulsory by other courts. Addressing these arguments in turn, the Court concludes that Pontone's motion falls short of the showing required to support the granting of reargument.

---

use his name, person, and reputation to visit customers and ensure that key clients maintained their relationship with the Pennsylvania Plaintiffs.").

First, Pontone apprised the Court before it issued its Opinion that he had requested permission to replead the abuse of process counterclaim.[29] Since the Opinion, the Pennsylvania court has granted Pontone leave to replead the abuse of process counterclaim. As Milso notes,[30] however, the Pennsylvania court adhered to its holding that counterclaims based on the "initiation and continuation" of the Pennsylvania Action remain unripe.[31] Instead, the Pennsylvania court ruled that any repled counterclaims must be "based on specific factual allegations linked to an identified kind of process asserted to have been abused" and will be severed from the main case.[32]

The Opinion in this case held that a "claim for relief that is not ripe at the time a defending party serves its responsive pleading does not qualify as a compulsory counterclaim."[33] The Opinion also found that the principal basis for

---

[29] Pl.'s Exceptions Br. 35 ("Milso also fails to mention that the counterclaim was dismissed **without prejudice** for pleading insufficiency. Promptly after dismissal, Pontone filed a motion for leave to amend this counterclaim. That motion to amend is still pending.") (internal citations omitted).

[30] Def.'s Answer 11.

[31] *York Gp., Inc. v. Pontone*, 2014 WL 896632, at *45 (W.D. Pa. Mar. 6, 2014).

[32] *Id.*

[33] Mem. Op. at *10.

Pontone's abuse of process counterclaim was the initiation and continuation of the Pennsylvania Action.[34] Since the Court issued the Opinion, the Pennsylvania court explicitly has held that the defendants in the Pennsylvania Action, including Pontone, "will not be granted leave at this time to replead claims of that nature because the litigation is ongoing."[35] Thus, nothing has changed with regard to the abuse of process counterclaim Pontone initially tried to plead, which was the subject of the Opinion for which he seeks reargument.

Second, seizing on the above-quoted language from the Opinion, Pontone now argues his counterclaim was ripe. In this regard, the Court agrees with Milso that: "With this argument, Pontone appears to be seeking reargument not only of this [Court's] Opinion, but the Pennsylvania court's prior decisions."[36] This Court is not in the business of deciding whether a counterclaim based on Pennsylvania law was ripe at the time it was filed in a Pennsylvania court when a Pennsylvania judge already has held that it was not.

---

[34]    *Id.*

[35]    *York Gp., Inc.*, 2014 WL 896632, at *45.

[36]    Def.'s Answer 12.

Third, Pontone argues that Milso conceded that Pontone's counterclaim for abuse of process was compulsory.[37]    Pontone previously presented an entire paragraph on this point.[38]    A two-sentence recitation of an earlier rejected argument provides no basis for a motion for reargument.  Finally, Pontone asserts that "this Court overlooked that counterclaims for abuse of process have previously been found to be compulsory."[39]  Citations to a 1987 Ninth Circuit opinion and a 1961 Third Circuit opinion follow.  Whether the Third Circuit found an abuse of process counterclaim to be compulsory in one case it decided over fifty years ago is immaterial here; the Opinion based its holding on the findings of a particular Pennsylvania court with regard to a particular counterclaim, which the Pennsylvania court found to be unripe.

For the foregoing reasons, Pontone's motion fails to meet the standard for obtaining reargument.

### C.    Supplementing the Record

Before concluding, I consider it useful to comment briefly on the issue of supplementing the record on a motion for reargument.  A motion for reargument

---

[37]    Pl.'s Mot. 15.

[38]    Pl.'s Exceptions Br. 35.

[39]    Pl.'s Mot. 15-16.

deals with the record as of the time of the initial determination. Motions for reargument *can* involve consideration of new evidence. But, "[t]o succeed on such a basis, an applicant must show the newly discovered evidence came to his knowledge since the trial and could not, in the exercise of reasonable diligence, have been discovered for use at the trial."[40] In this case, Pontone asks the Court to supplement the record with the Pennsylvania Plaintiffs' Expert Report on Damages.[41] This report, which was submitted in the Pennsylvania Action after the close of briefing on Milso's exceptions to the Special Master's Second Report—but before this Court issued the Opinion—generally is not the sort of evidence that a court will permit a party to add after a motion has been decided. Most importantly, even if the Court did consider the Expert Report, it would not change the outcome here. For purposes of Pontone's motion for reargument, the Expert Report is irrelevant, because, as noted above, personal goodwill can be a factor in determining lost profits. The misappropriation counterclaim at issue in this advancement case is distinct from the Pennsylvania Plaintiffs' offensive claims.

---

[40]   *Reserves Dev. LLC*, 2007 WL 4644708, at *1.

[41]   Pl.'s Mot. 11 n.4, Ex. 1.

For that and other reasons previously discussed, the Expert Report does not further Pontone's argument that the misappropriation counterclaim is compulsory.

Pontone also notes that the Court has discretion to supplement the record if it "serves the interest of fairness and justice."[42]  This is true, but the Court considers several factors in determining whether to grant a motion to reopen the record, such as:

> (1) whether the evidence has come to the moving party's knowledge since the trial; (2) whether the exercise of reasonable diligence would have caused the moving party to discover the evidence for use at trial; (3) whether the evidence is so material and relevant that it will likely change the outcome; (4) whether the evidence is material and not merely cumulative; (5) whether the moving party has made a timely motion; (6) whether undue prejudice will inure to the nonmoving party; and (7) considerations of judicial economy.[43]

In the circumstances of this case, the Court does not find it to be in the interests of justice to consider the Expert Report.  The report has little, if any, relevance to Pontone's misappropriation counterclaim and, to the extent it may be relevant, it is merely cumulative of arguments already made by Pontone that the

---

[42]     *Id.* at 11 n.4 (quoting *Whittington v. Dragon Gp., LLC*, 2012 Del. Ch. LEXIS 163, at *9 (Del. Ch. July 20, 2012)).

[43]     *Whittington*, 2012 Del. Ch. LEXIS 163, at *10-11 (internal citations omitted).

misappropriation counterclaim is compulsory. Additionally, considerations of judicial economy counsel against allowing parties to supplement the record on a motion for reargument except in those cases where, as factor three counsels, "the evidence is so material and relevant that it will likely change the outcome." Absent such a situation, reargument under Court of Chancery Rule 59(f) "is only available to re-examine the existing record."[44]

## III. Conclusion

To succeed on a motion for reargument, a movant must show that the Court overlooked or misapprehended some critical fact or controlling law that would have resulted in a different outcome. Pontone's motion for reargument failed to make such a showing. Thus, for the reasons stated in this Letter Opinion, the motion is denied.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Donald F. Parsons, Jr.*

Donald F. Parsons, Jr.
Vice Chancellor

DFP/ptp

---

[44]     *Reserves Dev. LLC*, 2007 WL 4644708, at \*1.